976 F.2d 735
 24 U.S.P.Q.2d 1639
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
ABBOTT LABORATORIES, Plaintiff-Appellee,
v.
MEAD JOHNSON & COMPANY, Defendant-Appellant.
 No. 92-3002.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 10, 1992.
Decided Sept. 23, 1992.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division, No. IP91-202C; William E. Steckler, Judge.
 S.D.Ind.
 AFFIRMED IN PART, MODIFIED, AND REMANDED.
 
 Order
 
 1
 Our initial opinion, issued on July 23, vacated the denial of preliminary relief and ordered the district judge "to promptly commence a full trial on the merits." Slip op. 1. Later we defined prompt as "within 60 days." Slip op. 30. We anticipated that trial was just around the corner in part because the hearing concerning preliminary relief, which lasted ten days, showed that both sides were well prepared, and in part because at oral argument both sides represented that they would be ready for trial soon. Only Mead Johnson suggested a need to gather additional information, and the study that Mead was conducting has been completed.
 
 
 2
 In case something held up the trial, we stated, the district judge must "fashion preliminary relief ... in accordance with this opinion." Slip op. 29. The opinion had observed that preliminary relief should take an intermediate form--less than the exclusion of Ricelyte TM from the market (which Abbott Laboratories had demanded) but more than nothing. Exclusion, we thought, was excessive, because it would restore Abbott's monopoly position, to the detriment of consumers. We did not require the district court to bar the use of the name Ricelyte TM. Although the name misleads when used in connection with the ad campaign showing grains of whole rice falling into solution, it is not false: Mead's electrolyte is indeed derived, albeit remotely, from rice.
 
 
 3
 On remand, Mead announced that it was ready for trial. Abbott resisted, stating that so long as Mead wanted to present the case anew before a jury, it needed discovery into damages. (It had sought none while the appeal was pending.) The state of the district judge's health was a greater obstacle. The judge informed the parties that he was unable to conduct a lengthy jury trial and could not estimate when his health would permit such proceedings. The judge rebuffed Mead's proposals to transfer the case to another judge; Abbott rejected Mead's suggestion that a magistrate judge conduct the trial.
 
 
 4
 The judge then heard lengthy argument from counsel, most of it off the record. Mead acquiesced in the entry of preliminary relief compelling it to cease claiming that Ricelyte TM has or contains rice, or is "rice-based," or that "rice makes a difference." It agreed to eliminate the ads showing rice falling into a solution, and to change the label on its bottle. But it resisted Abbott's demand that it abolish the name Ricelyte TM. That, Mead insisted, would be the death knell for the product, and it would not make financial sense to re-launch the product under a new name given the small size of the market. Mead brought to court a witness prepared to testify that an order to change the name, and an order to abandon the oral electrolyte market, amount to the same thing. The district judge waved aside the testimony, apparently accepting Mead's position on the consequence of such an order. Nonetheless he directed Mead to change the product's name within 90 days. His written order states no reasons. In open court the only reason the judge stated was: "I just feel that what the appellate court has said indicates to this court that the term Ricelyte cannot be used. And it didn't say that in so many words, but it's implicit, in this court's opinion, that I should not allow it."
 
 
 5
 Nothing in our opinion directed the district judge to eliminate the name "Ricelyte TM" from the market. If we had thought specific remedies essential, we would have named them. Instead we remanded so that the district judge could exercise his own discretion. That has not occurred. The district judge did not consider the benefits and costs of particular relief, either in relation to the need for such remedies pending trial or on an absolute standard. As we have remarked, the district judge gave no reason other than to attribute the decision to this court--and we made no such decision.
 
 
 6
 Quite the contrary, we suggested that the district court award some intermediate relief--enough to end and perhaps counteract the misleading ads, yet not remove the product from the shelves. We must assume, given the district judge's disinclination to hear evidence on the score, that a change of name would indeed end competition in the oral electrolyte market and subject consumers once again to a monopoly.
 
 
 7
 This is the second appeal concerning preliminary relief. Cases of this kind should not bounce back and forth between trial and appellate courts at the preliminary stage. We therefore affirm the district court's judgment, with the exception of the direction that Mead cease using the name Ricelyte TM. That remedy would be appropriate, if at all, only after trial on the merits.
 
 
 8
 This case now should be resolved, and promptly. Mead's exercise of its constitutional right to a jury trial does not justify delay. There shall be no additional proceedings concerning preliminary relief. The order, as we have modified it, will stand until the final judgment at the conclusion of the trial on the merits.
 
 
 9
 AFFIRMED IN PART, MODIFIED, AND REMANDED.